UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NELSON GIDDINGS, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:23-0707 |
| v. | : | (JUDGE MANNION) |
| THOMAS MCGINLEY, *et al.*, | : | |
| Defendants | : | |

# MEMORANDUM

## I. BACKGROUND

On April 28, 2023, Plaintiff, Nelson Giddings, an inmate confined in the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Township), filed the above-captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The action proceeds *via* an amended complaint, filed on July 28, 2023, (Doc. 25). The named Defendants are the following SCI-Coal Township employees: Superintendent Thomas McGinley; Security Captain Shawn Scicchitano; and Medical Director Lynette Rich. Id. Plaintiff complains of an incident which occurred on February 17, 2023, in which Plaintiff sustained injuries as a result of an assault by two inmates. Id. For relief, Plaintiff seeks compensatory and punitive damages. Id.

Presently before the Court is Defendants' motion to dismiss the amended complaint for Plaintiff's failure to allege an Eighth Amendment failure to train or protect claim, or a deliberate indifference to medical needs claim. (Doc. 28). However, for the reasons set forth below, the Court need not address Defendants' motion to dismiss the merits of Plaintiff's amended complaint, as the Court will *sua sponte* dismiss the above captioned action for Plaintiff's failure to exhaust administrative remedies.

## II. FACTUAL ALLEGATIONS IN THE COMPLAINT

On February 17, 2023, Plaintiff was playing chess with another inmate when Inmate Bowen "came up behind Plaintiff Giddings and grabbed his side." (Doc. 25). Plaintiff told Inmate Bowen "not to grab him like that" and "finished his game." Id. Upon finishing his game, Plaintiff proceeded to his cell. Id. When Plaintiff arrived at his cell, "he noticed that Inmate Bowen was standing in front of his cell." Id. Inmate Bowen "asked in an aggressive tone if Plaintiff Giddings had a problem." Id. Plaintiff stated that "he did not appreciate that Inmate Bowen grabbed his side like he was some kind of girl or something." Id. Inmate Bowen "asked if Plaintiff Giddings was calling him a faggot or something" and then "struck Plaintiff Giddings in the forehead with a sharp object, puncturing Plaintiff Gidding's forehead." Id. At that point,

another inmate, Inmate Mateo "struck Plaintiff Giddings in the ride side of the head with a blunt object, known as a 'lock-in-a-sock'." Id. Giddings "tried to defend himself by throwing punches at Inmate Bowen as necessary." Plaintiff claims that Corrections Officer ("C/O") Wagner "ran up the steps to the top tier and yelled for the inmates to stop fighting." Id. Plaintiff then turned towards C/O Wagner "to let her know he was being stabbed." Id. He claims that "C/O Wagner immediately sprayed Plaintiff Giddings in the face and eyes with 'Pepper' or 'OC Spray'." Id. At that point "inmate Mateo came from behind Plaintiff, placed him in a choke hold and stated "I'm gonna kill this nigger." Id. Plaintiff then lost consciousness and fell to the floor face down, while Inmate Bowen "repeatedly stabbed Plaintiff Giddings in the lower and upper back with a sharp object and then proceeded to kick Plaintiff Giddings in the right side of the face and head." Id. When Plaintiff regained consciousness, he was taken to the SCI-Coal Township medical department he "was sprayed in the face and eyes with water, wiped down with cloth and then taken to the Restricted Housing Unit (RHU)." Id. He claims that "none of [his] wounds were properly dressed by medical staff." Id.

    On February 19, 2023, Plaintiff claims that he "tried to the best of his ability, due to obvious damage to his larynx (loss of voice) to communicate

with Lieutenant Jordan to let him know that he was coughing up blood and needed medical attention. Id.

On March 9, 2023, Plaintiff "placed an informal (DC-135A) request to SCI-Coal Township Grievance Coordinator, Ms. Amy Wheary, asking for an extension of time in which to file a formal grievance under Pennsylvania DOC Policy ADM-804[1], due to his immediate need to concentrate his attention on healing from his injuries suffered and pain associated from the attack." Id. He claims that the "grievance coordinator denied his request for an extension of time stating, 'You had ample time to submit an 804 grievance while you were housed in the RHU'." Id.

On March 15, 2023, Plaintiff submitted an Informal Request to Defendant, Superintendent McGinley, complaining about Ms. Wheary's denial of an enlargement of time. Id. McGinley stated in his response: "After my review, you did not inquire about this until 3/9. You had ample opportunity to discuss such w/me during my weekly rounds in the RHU. The incident occurred on 2/18. It is now untimely. Your inquiry on 3/9 should have been your grievance. You were still timely". Id.

---

[1] Plaintiff claims that DOC ADM-804 allows exceptions to the 15-day filing requirement in limited circumstances. Id.

Also on March 15, 2023, Plaintiff submitted a formal grievance detailing his continual pain when coughing and coughing up of blood. Id. He "requested to be taken for an MRI due to residual headaches and to see an Ear, Nose & Throat (ENT) specialist for his throat concerns for fear of permanent damage". Id. His grievance was "answered and denied". Id. He was told that the doctor would be "requesting a consultation with an ENT, but that could take some time". Id.

On April 28, 2023, Plaintiff filed the instant action, (Doc. 1) and an amended complaint on July 28, 2023, (Doc. 25) which is largely duplicative of this original complaint. The gravamen of his complaint is that he failed to receive any medical attention regarding his injuries sustained as a result of the assault. Id. He seeks compensatory and punitive damages for relief. Id.

Specifically, with respect to the named Defendants, Plaintiff claims that Defendants McGinley and Scicchitano displayed "willful neglect to address safety concerns or protocols when [they] knew or had reason to know of Inmate Bowen's propensity for violence and authorizing the returning of Inmate Bowen back to Echo Bravo block after being convicted of previous weapon offenses while housed on Echo Bravo block, instead of possible transfer to another facility or the east side of SCI-Coal Township; placing Plaintiff Giddings in harms way in direct violation of Plaintiff Gidding's 8th

Amendment right against cruel and unusual punishment and failure of proper administration of staff policies and procedures to protect the welfare of inmates and staff when knowledge of potential harm is present." Id.

Finally, as to Defendant Lynch, Plaintiff claims that Rich and SCI-Coal Township Medical Department staff failed "to administer proper and necessary medical treatment to Plaintiff Giddings, whose injuries were presented as severe and numerous, as well as failure to render proper medical attention when Plaintiff Giddings submitted several sick-call slips and requests asking for medical attention due to this injuries; all in direct violation of Plaintiff Gidding's 8th amendment right against cruel and unusual punishment." Id.

### III. Discussion

Pursuant to the Prison Litigation Reform Act (PLRA), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies. See 42 U.S.C. §1997e; Ross v. Blake, 578 U.S. 632 (2016). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532

(2002). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006)(footnote and quotation marks omitted). Requiring exhaustion provides prison officials a "fair opportunity to correct their own errors". Id. at 94.

"[T]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 212 (2007); Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 602 (3d Cir. 2015) (exhaustion of prison administrative remedies is mandatory under the PLRA). The only exception to the PLRA's exhaustion requirement is "built-in." As confirmed by the United States Supreme Court in Ross, supra: "A prisoner need not exhaust remedies if they are not 'available'". Ross, 578 U.S. at 636. Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires resolution of disputed facts. Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir. 2013).

Dismissal of an inmate's claim is appropriate when the prisoner has failed to exhaust his available administrative remedies before bringing a civil-

rights action. Nifas v. Beard, 374 Fed.Appx. 241, 245 (3d Cir. 2010) (nonprecedential) (affirming grant of summary judgment that dismissed claims without prejudice where administrative remedies were not exhausted prior to commencement of action); Oriakhi v. United States, 165 Fed.Appx. 991, 993 (3d Cir. 2006) (nonprecedential) (citing Ahmed v. Dragovich, 297 F.3d 201, 209 & n. 9) ("Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court.") Furthermore, the filing of an amended complaint after an unexhausted claim is presented to the court does not cure the infirmity. Id. at 209 (holding that "[w]hatever the parameters of 'substantial compliance' referred to there, it does not encompass a second-step appeal five months late nor the filing of a suit before administrative exhaustion, however late, has been completed. It follows that Ahmed cannot cure the defect in his action by the proffered amendment of the complaint.").

A plaintiff is not required to allege that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Nevertheless, *sua sponte* dismissal is appropriate where "the basis [of plaintiff's failure to exhaust his administrative remedies] is apparent from the face of the complaint." Id. at 297. Additionally, we take judicial notice of the

Pennsylvania Department of Corrections' three-tiered inmate grievance procedure as set forth in DC-ADM 804.[2] See Spruill v. Gilils, 372 F.3d 218, 232 (3d Cir. 2004).

    Although not required to, Giddings addresses the issue of his exhaustion of administrative remedies in his amended complaint, indicating that, although he filed informal requests to staff regarding the incident and his medical treatment, he did not attempt to file a formal grievance until March 9, 2023, when he submitted an enlargement of time within which to do so. (Doc. 1 at 7). SCI-Coal Township Grievance Coordinator Amy Wheary denied Plaintiff's request for enlargement of time, stating that he "had ample time to submit an 804 grievance while [he] was housed in the RHU." Id. On March 15, 2023, Plaintiff submitted an informal request to Superintendent McGinley about the denial of his request for enlargement of time. Id. McGinley agreed that Plaintiff "had ample opportunity to discuss such with [him] during [his] weekly rounds in the RHU" and that his "inquiry on 3/9 should have been [his] grievance" as he was "still timely" to grieve the incident which occurred on February 18, 2023. Id.

---

[2] The DOC's *Inmate Grievance System* policy, DC-ADM 804, can be found in the Inmate Handbook, and on-line at http://www.cor.pa.gov.

On March 15, 2023, Plaintiff did file a formal grievance regarding the continued "pain when coughing and coughing up blood." (Doc. 1 at 8). Plaintiff claims that his grievance was "answered and denied" in that "he was told that the doctor would be requesting a consultation with an ENT, but that could take some time." Id.

Giddings admits that he has not exhausted his remedies as to the claims raised in his amended complaint. Although he claims that he "tried to receive answers," he admits that his initial attempt to file a formal remedy regarding the February 18, 2023 incident, and resulting medical treatment, was denied as untimely and that the he filed only one formal grievance, regarding medical care, which was "answered and denied" at the initial level but never appealed.[3] Consequently, the Court cannot excuse Giddings' admitted failure to exhaust the claims raised in his amended complaint.

---

[3] To that extent, the grievance system provided for under DC-ADM 804 contemplates several levels of review. The first step is that the inmate is required to submit a grievance to the Facility Grievance Coordinator or designee, usually the Superintendent's Assistant, within fifteen (15) working days after the event upon which the grievance is based. Id. The second step is that the inmate is required to appeal an initial review response/rejection to the Facility Manager or designee within fifteen (15) working days from the date of the initial review response/rejection. Id. The third step is that the inmate is required to appeal the Facility Manager/designee's decision to final review at the Secretary's Office of Inmate Grievances and Appeals within fifteen (15) working days of the date of the Facility Manager/designee's decision. Id.

Accordingly, based on admission of his failure to exhaust claims raised in his amended complaint, Giddings' complaint will be dismissed without prejudice pursuant to 28 U.S.C. §1997e(a). See Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000) (determining that dismissal without prejudice is appropriate when an inmate has failed to exhaust his available administrative remedies before filing an action under 42 U.S.C. §1983). The Court need not address Defendants' argument that Plaintiff has failed to show any Eighth Amendment violation. (Doc. 33 at 6-8).

## IV. CONCLUSION

For the reasons set forth above, the Court will dismiss the Complaint without prejudice pursuant to 28 U.S.C. §1915(e)(2)(B) for Plaintiff's admitted failure to exhaust administrative remedies. In light of this Court's *sua sponte* dismissal for Plaintiff's failure to exhaust administrative remedies, Defendants' motion to dismiss will be dismissed as moot.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 2, 2024**
23-0707-01